[No. 18160. Department One. January 31, 1924.]

WASHINGTON IRON WORKS, *Respondent*, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Appellant*.[1]

INSURANCE (49-1, 51)—CONTRACT—DESCRIPTION OF RISK—MARINE INSURANCE—"STRANDING." The "F. P. A." warranty in a policy of marine insurance means that if a stranding takes place at any time the "F. P. A." clause is stricken and the policy construed as though it had not been inserted.

SAME (49-1, 51). Stranding, as used in the "F. P. A." warranty in a policy of marine insurance is shown where the vessel, in attempting to reach a wharf in a harbor, without expectation of touching bottom, accidentally went aground and was arrested in her progress and held fast for some time.

Appeal from a judgment of the superior court for King county, Ralston, J., entered March 23, 1923, upon the verdict of a jury rendered in favor of the plaintiff,

[1]Reported in 222 Pac. 487.

in an action upon a policy of marine insurance. Affirmed.

*Bogle, Merritt & Bogle,* for appellant.

*Battle, Hulbert, Gates & Helsell,* for respondent.

MAIN, C. J.—Did the "Julia Luckenbach" strand in the harbor of San Diego, California?

This is the only question presented in this action, brought for the purpose of recovering on a marine insurance policy, and is conceded by both parties to the litigation to be, as stated in the appellant's brief, "purely a legal question for the court to determine, and no question of fact is involved therein."

The respondent made a shipment on the "Julia Luckenbach" of steel plates, to be carried from New York via Panama Canal to Puget Sound, and covering that shipment had a marine insurance policy issued by the appellant in the usual "F. P. A." form; the effect of the policy being to protect the respondent against total loss only except as the liability was enlarged by clause ten, which contained the F. P. A. warranty, "warranted free from particular average unless the vessel or craft be *stranded,* sunk or burned." The policy also contained clause 11, which reads as follows:

"Grounding in the Panama Canal or in the Suez Canal or in the Manchester Ship Canal or its connections, or in the River Mersey above Rock Ferry Slip, or in the River Plate (above Buenos Aires) or its tributaries, or in the Danube, Demerara, or Bilbao River or on the Yenikale or Bilbao Bar, Columbia, Willamette, Yukon and / or Fraser Rivers and / or Yukon Flats not to be deemed a strand, but assurers are to pay any damage or loss which may be proved to have directly resulted therefrom."

After leaving San Diego for Puget Sound, the vessel met with heavy weather, during which the cargo shifted

and the respondent's property was damaged to the extent of $1,005.73, the amount of the verdict rendered by the jury.   It is admitted that the damage to the respondent's property was only a partial loss thereof, and that the damage did not occur by reason of the stranding, the details of which will later appear.   The appellant is sought to be held responsible upon the theory that the F. P. A. warranty referred to in clause 10 was deleted by the stranding of the vessel in San Diego harbor while the respondent's property was on board; and that, as a result of such deletion, the general terms of the policy were opened, thus entitling the respondent to recover for the partial loss.   This clause has always been construed to mean that, if a stranding takes place, whether before or after the cargo receives damage, the F. P. A. clause is stricken and the policy is construed as though it had never been inserted.

The vessel arrived at San Diego outer harbor in the forenoon of March 24, 1922, and made her way towards the inner harbor, where she was to discharge five hundred tons of coal at a coal bunker wharf.   She arrived near the wharf about 11 a. m., and anchored from 11:04 a. m. until 2 p. m., waiting for a favorable tide for the purpose of attempting to get alongside.   On a flood tide, without soundings, the vessel proceeded to the wharf and arrived in a position parallel to the wharf and distant fifty to one hundred feet therefrom when she struck.   Lines were taken from her to the wharf by launch, and were fixed fore and aft on the vessel. The lines were heaved on but the vessel made little progress toward the wharf, and it was impossible to bring her alongside.   The lines were made fast on the wharf at 2:28 p. m., and the attempt to work her to the wharf continued until 5 o'clock, p. m.   At 3:45 p. m.

the stern line parted.  At 5 p. m. soundings were made
on the side of the vessel nearer the wharf and showed
24 feet of water abreast of hold No. 8.  The vessel
drew approximately 20 feet forward and 27 feet aft.
Upon these soundings being made, the vessel was al-
lowed to wait until the tide rose.  At 5 o'clock this log
entry was made, "vessel being aground secured ship
and was waiting for rise of tide."  At 6:29 p. m. the
vessel floated and was taken out to an anchorage,
where the coal was discharged in lighters.

San Diego harbor charts show a depth of about 30
feet at the end of the wharf and about 25 feet at a
point between the wharf and the stern of the vessel
where she lay.

It is the contention of the appellant that these facts
do not establish a "stranding," and that the ship was
at all times under her own power.  The evidence, how-
ever, would seem to bear no other interpretation than
that the vessel was on the bottom, abreast of hold No.
8, and that she pivoted on the bottom as her bow and
stern lines were alternately worked.  The appellant
refers to the operation of the engines, but the testimony
would show that they were merely operated with the
windlass and capstan working the stern and bow lines.

The law has fixed a definite meaning to the word
"stranding," as used in the F. P. A. warranty, and if
the stranding was involuntary and unintentional, the
stranding would be such as is covered by clause 10.
By clause 11 it appears that, in certain harbors, it is
anticipated that vessels will take the ground in the
ordinary course of navigation and that grounding at
such places, by clause 11, is "not to be deemed a
strand."  As was said by Tindal, C. J., in *Kingsford v.
Marshall,* 8 Bing. 458:

"The mere taking of the ground, therefore, in a
tide harbor, in the place intended by the master and

crew, or the proper officers of the harbor, cannot, upon any principle of construction or common sense, be held to constitute a stranding. What more, then, is necessary? We think a stranding cannot be better defined, than it has often been in several of the decided cases, viz. where the taking of the ground does not happen solely from those natural causes which are necessarily incident to the ordinary course of the navigation in which the ship is engaged, either wholly or in part, but from some accidental or extraneous cause.''

Applying the test whether the grounding was such as the master and crew intended, it would seem to be clear that the situation in which the vessel found itself in attempting to make the wharf at San Diego harbor was not the result of the intention of the master and was wholly or in part the result of some accidental or extraneous cause.

Templeman on Marine Insurance (2d ed.), at page 89, says:

''The grounding must have been accidental or unusual. If the taking of the ground was in an accustomed place and manner, as for instance, in a tidal harbor, then there is no stranding.''

Gow on Marine Insurance (4th ed.), at page 176, says:

''The stranding must be fortuitous, accidental—not part of the customary navigation on the voyage insured.''

Lord Ellenborough, in *Harman v. Vaux,* 3 Campb. 429, says:

''It is not merely touching the ground that constitutes a stranding. If the ship touches and runs, the circumstance is not to be regarded. There she is never in a quiescent state. But if she is forced ashore, or is driven on a bank, and remains for any time upon

12—128 Wash.

the ground, this is a stranding, without reference to the degree of damage she thereby sustains.''

In the case of *Amok Gold Mining Co. v. Canton Ins. Office,* 36 Cal. App. 265, 171 Pac. 1098, the court says this in answer to the question of what is a strand:

''The meaning of the word 'stranded' is well settled. The vessel must remain stationary for a time. Stranding implies a settling of the vessel, some rest or interruption of the voyage under extraordinary circumstances. If the ship merely touch and go she is not stranded, but a settling of the ship on land, be it rocks or bar or shore, so that she be stationary for even a brief period, is a 'stranding.' ''

And in *Lake v. Columbus Insurance Co.,* 13 Ohio St. 48, the supreme court of Ohio says:

''To constitute a stranding, the vessel must be stationary some time. In this case it must have remained 'aground,' upon the rock or stump, which caused the bilging and loss, a longer or shorter period, so as to check the navigation and interrupt the voyage. A mere instantaneous stoppage does not constitute a stranding.''

Under all these definitions, the ''Julia Luckenbach'' was stranded, for she accidentally went aground and was arrested in her progress and held fast for a space of time. That it was accidental appears by the fact that it happened by chance, without expectation and not according to the usual course of things. When a master attempts to take his vessel to a certain point which he considers can be reached without touching bottom and the event proves he was mistaken, the grounding is accidental. In order to be a stranding it is not necessary that the vessel be wrecked. The question is whether she was resting on the bottom and was compelled to rest there for some space of time.

We therefore agree with the trial court that, as a

matter of law, the vessel was stranded, and the judgment is therefore affirmed.

PARKER, MACKINTOSH, HOLCOMB, and TOLMAN, JJ., concur.